# United States Court of Appeals
## For the First Circuit

No. 15-1946

UNITED STATES OF AMERICA,

Appellee,

v.

SENNY ARIAS,

Defendant, Appellant.


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]


Before

Lynch, Lipez, and Barron,
Circuit Judges.


Paul J. Garrity was on brief for appellant.
Demetra Lambros, Attorney, Appellate Section, Criminal Division, United States Department of Justice, with whom Leslie R. Caldwell, Assistant Attorney General, Sung-Hee Suh, Deputy Assistant Attorney General, Carmen M. Ortiz, United States Attorney, and Theodore B. Heinrich, Assistant United States Attorney, were on brief, for appellee.


February 17, 2017

**BARRON**, **Circuit Judge**.    Senny Arias appeals his convictions and sentence for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and conspiracy to distribute heroin, in violation of 21 U.S.C. § 846.  We affirm.

**I.**

The charges brought against Arias stem from an investigation that began in 2012 of Jason Melchionda.  Melchionda was the suspected head of a drug-trafficking organization operating on Massachusetts' North Shore.[1]  Pursuant to a warrant, law enforcement officers serving on a task force for the United States Drug Enforcement Agency ("DEA") tapped the phones of Melchionda and several of his associates.  From those conversations, the officers learned that someone named "Sarnie" was supplying large quantities of heroin to Melchionda.  The officers thus began to surveil the movements of Melchionda.

On July 2, 2013, officers on the task force observed the person that they believed to be "Sarnie" participate in a drug transaction and then drive away in a Nissan Murano.  The Murano was titled to Luis Rodriguez.  Based on this information, Detective David Gecoya, a Saugus, Massachusetts Police Department officer

---

[1] Because Arias does not contest the sufficiency of the evidence presented against him, we narrate the facts in a "balanced way, without favoring either side."  United States v. Rodríguez-Soler, 773 F.3d 289, 290 (1st Cir. 2014) (stating that the "balanced-presentation approach" is an acceptable option where the sufficiency of the evidence is not challenged).

who had been deputized to the DEA task force, sought a warrant to attach a Global Positioning System ("GPS") tracker to the Murano. Gecoya stated in the warrant affidavit -- wrongly, as it turned out -- that "Sarnie" is an alias for Rodriguez.

A little more than two weeks later, on July 11, 2013, Arias appeared at the police station in Saugus. He was there to bail out Bryan Gonzalez -- who is apparently known as "Chicken Legs" -- after Gonzalez had been arrested for driving the Murano without a license. Arias then left the station and went to a towing company to retrieve the Murano.

Arias provided a driver's license to the towing company, which turned over a photocopy of that license to Detective Gecoya. Detective Gecoya identified the person depicted in the license as a person who had been surveilled during the course of the investigation of Melchionda. Then, on July 23, 2013, Detective Gecoya observed another drug transaction involving "Sarnie" driving the Murano and identified the participant as the same person depicted in the license that Gecoya had been given by the towing company -- that is, Arias.

On July 24, Detective Sean Moynihan, an officer with the Saugus Police Department, pulled over the Murano at the request of Detective Gecoya. Detective Moynihan identified the driver as Arias. About two weeks later, on August 6, Officer Cabral, another officer with the Saugus Police Department, made a similar short

stop of the Murano, also at Detective Gecoya's direction.  Officer Cabral identified the driver as, once again, Arias.

Detective Gecoya arrested Arias on August 15.  At the time of his arrest, Arias had 77 bags of heroin -- totaling 22.4 grams -- on his person.  Additional heroin was recovered in Arias's apartment.  Later that day, Arias had an initial appearance and was remanded to the authority of the United States Marshals Service.

On September 12, 2013, Arias was indicted on two federal criminal counts: conspiracy to possess with intent to distribute and to distribute heroin, in violation of 21 U.S.C. § 846; and possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).  The indictment also contained an order of forfeiture of any property used to facilitate the commission of the crimes, under 21 U.S.C. § 853.

The trial occurred in May of 2015.  The jury convicted Arias on both counts.  At sentencing, the District Court concluded that Arias was responsible for the possession and sale of over 400 grams of heroin, but less than 700 grams.  On that basis, the District Court determined Arias's base-offense level under the United States Sentencing Guidelines to be 26.  The District Court also determined that Arias's criminal history category was I.  The District Court thus calculated Arias's guidelines sentencing range

to be 63 to 78 months' imprisonment.  The District Court then sentenced Arias to a term of imprisonment of 66 months.

Arias now raises a number of challenges to his convictions based on errors that he contends occurred both before and during the trial.  He also challenges his sentence.  We consider each claim of error in turn, starting with the ones that concern the rulings that the District Court made before the trial began.

## II.

Arias contends that the District Court erred in four respects prior to the start of the trial, and that each of these erroneous pre-trial rulings requires the reversal of his convictions.  He first argues that the District Court erred in denying his motion for what is known as a Franks hearing, under Franks v. Delaware, 438 U.S. 154 (1978), to determine whether the affidavit that Detective Gecoya filed in support of the warrant to place the GPS tracking device on the Murano contained a false statement that he made in reckless disregard of the truth.  Arias next contends that the District Court erred in denying a motion to suppress evidence stemming from the two traffic stops of the Murano, while Arias was driving it, because Arias contends that the officers lacked the reasonable suspicion of criminal activity that the Fourth Amendment requires in order for the stops to have been lawful.  Third, Arias contends that the District Court erred

by not granting his attorney leave to file a suppression motion after the passing of the deadline that the District Court had set for the filing of suppression motions.  Finally, Arias argues that the District Court erred by refusing to grant his attorney's request, made shortly before the trial began, for a continuance.

**A.**

We start with the first of the four pre-trial rulings that Arias challenges: the District Court's denial of Arias's motion for a <u>Franks</u> hearing to "test the veracity of" Detective Gecoya's affidavit in applying for the warrant to place the GPS tracker on the Murano.  <u>United States</u> v. <u>Tanguay</u>, 787 F.3d 44, 48 (1st Cir. 2015) (citing <u>Franks</u>, 438 U.S. at 155-56).[2]  If a defendant, by a preponderance of the evidence, shows at a <u>Franks</u> hearing that an affidavit in a warrant application contains false statements or omissions, made intentionally or with reckless disregard for the truth, and that a finding of probable cause would not have been made without those false statements or omissions,

---

[2] On April 6, 2015, Arias filed a pre-trial motion to suppress the evidence from the GPS tracking unit on the Murano on the ground that the warrant application filed by Detective Gecoya to place that device on that car relied on an affidavit by Gecoya that included a false statement (the identification of Rodriguez) made with reckless disregard for the truth.  At a colloquy with the defense counsel concerning this motion, the District Court interpreted this motion to be a motion for a <u>Franks</u> hearing and then denied it.  It is the denial of the motion -- as so characterized -- that Arias appeals.

- 6 -

then the defendant is entitled to the suppression of evidence obtained under that warrant.  Id. at 49.

A defendant is entitled to a Franks hearing, however, only if he first makes a "substantial preliminary showing" of the same two requirements that he must meet at the hearing -- that "a false statement or omission in the affidavit was made knowingly and intentionally or with reckless disregard for the truth" and that the false statement or omission was "necessary to the finding of probable cause."  United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015) (quoting United States v. Rigaud, 684 F.3d 169, 173 (1st Cir. 2012)).  In considering a district court's decision to deny a Franks hearing, we review factual determinations for clear error and the probable cause determination de novo.  Tanguay, 787 F.3d at 49-50.  Applying these standards, we find no error in the District Court's determination that Arias did not make the necessary preliminary showing as to the first requirement -- that the false statement was made knowingly and intentionally or with reckless disregard for the truth.

Arias bases his challenge to the denial of his request for a Franks hearing on the false statement in the affidavit that identifies Rodriguez as "Sarnie," the driver of the Murano, a vehicle that was surveilled at the scene of a drug transaction. In fact, "Sarnie" was Arias and not Rodriguez, and the person driving the car at that time was Bryan Gonzalez, otherwise known

as "Chicken Legs." The false statement thus had the effect of equating -- wrongly -- Rodriguez and "Sarnie" and thereby using Rodriguez to tie the Murano to "Sarnie's" suspected drug trafficking.

Arias contends Detective Gecoya made this false statement with reckless disregard for the truth. "Recklessness may be inferred 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (quoting United States v. Williams, 737 F.2d 594, 602 (7th Cir. 1984)). Arias argues that the affidavit itself reveals obvious reasons to doubt the veracity of the identification of the driver of the Murano as Rodriguez. The affidavit describes a series of phone calls and text messages between Melchionda and the user of "Target Telephone #5," who was referred to in the phone calls as "Sarnie," arranging a meeting for a drug transaction. Arias contends that the description of the recorded communications in the affidavit indicates that the user of Target Telephone #5 would be sending someone else to the transaction, rather than going himself.

The District Court reasonably determined, however, that Gecoya's "apparent surmise that the registered owner of the vehicle [Rodriguez] was the driver was not inherently implausible." While the affidavit notes that the user of Target Telephone #5 stated that he planned to call Melchionda to set up a time for the

- 8 -

transaction after he met with Chicken Legs and after Chicken Legs left, the affidavit does not indicate that Chicken Legs, rather than the user of Target Telephone #5, would be going to the transaction. The record instead reveals a series of increasingly detailed phone calls between the user of Target Telephone #5 and Melchionda regarding the time and place for the transaction. The record in this respect supports the inference that the user himself was going to the transaction. Because "'[m]ere inaccuracies, even negligent ones, are not enough' to warrant a Franks hearing," United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003) (quoting United States v. Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002) (alteration in original)), we see no basis for finding error in the District Court's ruling denying the motion for a Franks hearing.

**B.**

We now take up Arias's challenge to the District Court's denial of Arias's motion to suppress testimony related to the two traffic stops of the Murano, on July 24, 2013 and August 6, 2013. The parties agree that, under the Fourth Amendment, a short investigative vehicle stop requires that the officers executing the stop have "reasonable suspicion to believe that criminal activity 'may be afoot.'" United States v. Wright, 582 F.3d 199, 205 (1st Cir. 2009) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)). A finding of reasonable suspicion must be

- 9 -

"grounded in specific and articulable facts." Id. (quoting United States v. Espinoza, 490 F.3d 41, 47 (1st Cir. 2007)). These facts must amount to "more than a mere hunch but less than probable cause." Id. (quoting United States v. Ruidíaz, 529 F.3d 25, 29 (1st Cir. 2008)).

In his motion to suppress, Arias contended that the officers who made the stops, directed by Detective Gecoya, did not on either of the occasions at issue have reasonable suspicion to pull over Arias while he was driving the Murano. The District Court held an evidentiary hearing on the matter and ruled against Arias. In reviewing a challenge to a district court's denial of a suppression motion, "we review the district court's findings of fact and credibility determinations for clear error. . . . However, we review de novo the district court's conclusions of law, including its application of the law to the facts." United States v. Camacho, 661 F.3d 718, 723-24 (1st Cir. 2011) (citation omitted).

We start by noting that it is undisputed that Detective Moynihan and Officer Cabral executed the stops at the direction of Detective Gecoya. Thus, if Gecoya had the requisite reasonable suspicion, it may be imputed to the officers executing the stop. See United States v. Barnes, 506 F.3d 58, 63 (1st Cir. 2007) ("[R]easonable suspicion can be imputed to the officer conducting

- 10 -

a search if he acts in accordance with the direction of another officer who has reasonable suspicion.").

As to the traffic stop on July 24, Arias concedes that Detective Gecoya may have had reasonable suspicion that the Murano was involved in criminal activity. Arias nonetheless contends that Detective Gecoya did not have the reasonable suspicion that was required -- "reasonable suspicion of Mr. Arias being involved with criminal activity." We do not agree, even if we were to assume that Detective Gecoya's reasonable suspicion that the car was involved in criminal activity would be insufficient to support a brief stop of the car.

The record shows that, on June 11 and June 12, Gecoya observed a person driving the Murano in the course of participating in what Gecoya believed to be, on the basis of wiretaps, drug transactions with another target of the investigation. And, on July 11, Gecoya determined, based on the driver's license provided to him by the towing company, that the person whom task force members had observed driving the Murano on June 11 and June 12 was, in fact, Senny Arias. Gecoya then observed Arias on July 23 behind the wheel of the Murano at a McDonald's and acting in a manner consistent with his participation in a drug transaction. These facts suffice to support a particularized and objective basis for Gecoya's suspicion both that Arias was involved in criminal activity and that he was driving the Murano at the time of the

- 11 -

stop.  See United States v. Arnott, 758 F.3d 40, 44 (1st Cir. 2014) (finding that extended monitoring of a suspect, with surveillance and recorded phone calls, that reveals a pattern consistent with repeated drug deals provides reasonable suspicion for a traffic stop).

As to the traffic stop on August 6, the District Court's ruling is also clearly right.  Gecoya by then had all the information that he had at the time of the July 24 stop.  But he also had more.  Surveillance of the Murano undertaken on August 6, but prior to the stop, revealed a pattern of behavior consistent with further drug deals.  Gecoya thus also had reasonable suspicion to request the stop on August 6.

## c.

Next, Arias contends that the District Court erred in denying his motion for leave to file a motion to suppress wiretap evidence.  The District Court based that ruling on its determination that the motion was filed after the deadline that the District Court had set for the filing of suppression motions.

We review the denial of a motion for leave to file a motion after a deadline for abuse of discretion.  United States v. Santos Batista, 239 F.3d 16, 20 (1st Cir. 2001).  A district court should, under Rule 12 of the Federal Rules of Criminal Procedure, grant leave to file an untimely motion "for cause," which we have

interpreted to mean "where there is a showing of cause and prejudice."  Id. at 19.[3]

The issue arises in the following way.  Initially, Edward Lee was appointed as Arias's attorney, but on February 13, 2015, Lee withdrew and Eric Tennen was appointed as Arias's new attorney. On February 24, the District Court set out a pretrial schedule that required that suppression motions be filed by March 17, 2015. The District Court then extended that deadline on March 17 to April 6.

On April 6, Arias filed the two suppression motions that we have already discussed, the first of which concerned the evidence acquired from the GPS tracking device and the second of which concerned the evidence acquired from the two vehicle stops. But, then, on April 30, Arias filed a motion for leave to file a third motion to suppress -- this one targeting the wiretap evidence.  In that motion, Tennen stated that the basis for this suppression motion had not become clear to him until April 25, when Arias and Tennen met and discussed the wiretap evidence.  At

_____

[3] In Santos Batista, we cited to Rule 12(f) as the standard that a district court applies in granting leave to file untimely motions to suppress.  After that case, the language in Rule 12(f) was moved to Rule 12(e), and then to Rule 12(c)(3).  However, the standard remains the same.  See Fed. R. Crim. P. 12 advisory committee's notes to 2014 amendments ("New paragraph 12(c)(3) retains the existing standard for untimely claims. The party seeking relief must show 'good cause' for failure to raise a claim by the deadline, a flexible standard that requires consideration of all interests in the particular case.").

a hearing on May 6, the District Court denied this third suppression motion because it had been filed more than two weeks after the previously imposed deadline for making such a filing.

Arias at no point indicated to the District Court what the grounds for this third motion were. Nor does he describe those grounds on appeal. Arias thus does not show any prejudice from its denial. He therefore cannot show that the District Court abused its discretion in enforcing the deadline that it had set. See United States v. Williams, 630 F.3d 44, 49 (1st Cir. 2010) ("[S]peculation about what assistance [a document not in the record] might have rendered to his defense falls hopelessly short of establishing, as he must, a likelihood of prejudice.").

**D.**

The last of Arias's challenges to the District Court's pre-trial rulings concerns the District Court's denial of Arias's motion for a continuance of the trial just prior to the trial's start. We set forth the relevant facts in brief.

Trial was set to begin on March 2, 2015. On February 17, Tennen, who we have noted was appointed as Arias's second attorney on February 13, 2015, filed Arias's motion to continue the trial, to which the government assented. In an affidavit attached to that motion, Tennen stated that he was scheduled to be in trial on a separate matter from February 18, 2015, until March 13, 2015. The District Court continued the trial until May 21,

2015.  On May 4, however, Tennen filed an unopposed motion by Arias to continue the trial again, this time requesting a start date of June 30, 2015.  It is the denial of this second motion to continue the trial that is at issue on appeal.

In the affidavit accompanying the second motion for a continuance, Tennen stated that, in a conversation with Arias on April 25, 2015, Tennen learned information that provided the basis for him to file a motion to suppress the evidence obtained from the wiretap and that he needed the extra time to prepare that motion.  Tennen also stated that he had been unable to prepare adequately for trial due to the large volume of discovery involved, the time that he had to spend to prepare the two suppression motions that he had already filed, and his other obligations.

We review a denial of a motion for a continuance of trial for abuse of discretion.  United States v. Rosario-Otero, 731 F.3d 14, 18 (1st Cir. 2013) (citing United States v. Fink, 499 F.3d 81, 89 (1st Cir. 2007)).  In reviewing such a decision, we consider a number of factors, including "the likelihood of injustice or unfair prejudice resulting from the denial of a continuance."  United States v. Delgado-Marrero, 744 F.3d 167, 196 (1st Cir. 2014).  "We consider this final factor to be essential, overturning the denial of a continuance only when the movant identifies specific, concrete ways in which the denial resulted in 'substantial prejudice' to his or her defense."  Id. (citations omitted).

Arias fails to support his challenge with an adequate showing of prejudice. He argues first that, if the District Court had continued trial, then Tennen would have filed a motion to suppress evidence from the wiretap before the deadline. But, as we have already noted, Arias does not now explain to us what the basis for that motion would have been and thus how his claimed inability to prepare it prejudiced him.

Arias also contends that, if the District Court had granted the continuance, Tennen would have prevented the jury from hearing evidence that the District Court later instructed the jury to disregard. That evidence was the testimony by Sergeant James Picardi, an officer with the Revere, Massachusetts Police Department, that the phone that Arias was carrying on his person at the time he was arrested had a particular phone number that had been tapped by the government in the course of its investigation of Melchionda.

The problem for Arias is that the District Court did ultimately exclude the evidence. Moreover, in doing so, the District Court issued a curative instruction to the jury to disregard it. As a general matter, "appellate courts inquiring into the effectiveness of a trial judge's curative instructions should start with a presumption that jurors will follow a direct instruction to disregard matters improvidently brought before them." United States v. Sepúlveda, 15 F.3d 1161, 1185 (1st Cir.

1993).  Arias makes no showing, however, that rebuts that presumption.  Thus, even if we were to assume that the ultimately stricken testimony might not have been heard by the jury at all if Arias's attorney had more time to prepare the case, Arias has not shown how the denial of the motion to continue the trial prejudiced him.

Finally, Arias claims prejudice by pointing to a police report that was introduced into evidence at trial and that Arias contends contained exculpatory evidence regarding the weight of the drugs recovered in an apartment in which he lived.  Arias acknowledges that Tennen, his attorney, was able to rely on this report in cross-examining a witness that the government called at trial about the weight of the drugs recovered.  Arias contends that if the continuance had been granted, Tennen would have been able to identify the discrepancy in time to cross-examine the witness regarding the police report immediately after the direct examination, rather than only on recall.  Arias does not explain, however, how the fact that Tennen could examine the witness only on recall prejudiced him.  Thus, Arias does not show the prejudice that he is required to show in order to prevail in his challenge to the District Court's decision to deny the motion to continue the trial.

- 17 -

## III.

Having addressed each of Arias's claims of pre-trial error, we now turn to his contention that the District Court made erroneous rulings at trial as well, and that these errors also require his convictions to be reversed. In particular, Arias contends that the District Court erred in admitting evidence related to a phone call in which Melchionda stated that he received regular deliveries of heroin from Arias, and that the District Court erred in denying Arias's motion for a mistrial. We find no error on either count.

### A.

Prior to trial, Arias moved to exclude a statement made on a recording of a phone conversation between Melchionda and an unidentified person on the ground that the statement was inadmissible hearsay. The government contended that, under Federal Rule of Evidence 801(d)(2)(E), the statement was not inadmissible because it was made by a co-conspirator, Melchionda, in furtherance of the drug trafficking conspiracy. Arias argued that the statement was not made in furtherance of the conspiracy.

In order to admit a statement under Rule 801(d)(2)(E), a district court must conclude, by a preponderance of the evidence, that the "declarant and the defendant were members of the same conspiracy and that the statement was made in furtherance of the conspiracy." United States v. Paz-Alvarez, 799 F.3d 12, 29 (1st

Cir. 2015). Here, the statement at issue was the one that Melchionda made to the unidentified person that Melchionda gets "40 bags from Senny every other day." That statement was made during a conversation in which Melchionda and the unidentified person discussed the pricing, supplying, and selling of heroin. The District Court concluded that the statement was made in furtherance of the conspiracy, stating that, "like any other business, people engaged in this business, it is helpful to them, it furthers their business to understand what others in competing businesses are doing. Again, like a Ford dealer sharing notes with a Chevy dealer or perhaps two Ford dealers sharing notes, I do think it furthers the conspiracy."

We review a District Court's decision to admit a statement under Rule 801(d)(2)(E) either for clear error, see Paz-Alvarez, 799 F.3d at 29, or for an abuse of discretion, see United States v. Colón-Díaz, 521 F.3d 29, 36 (1st Cir. 2008). We need not determine which standard applies because, even under the more defendant-friendly standard -- abuse of discretion -- the challenge fails.

Arias argues that Melchionda did not make the statement in furtherance of the conspiracy, because "[t]here was nothing in the call which indicated . . . that Melchionda was attempting to do business with [the unidentified caller]," and the call reflected merely "friends in the same business making idle conversation."

- 19 -

But we have made clear that "a statement need not be necessary or even important to the conspiracy . . . as long as it can be said to advance the goals of the conspiracy in some way." United States v. Martínez-Medina, 279 F.3d 105, 117 (1st Cir. 2002). And here, the District Court reasonably concluded that, in the recorded phone conversation, Melchionda traded information about the drugs that he received from Arias for information from an associate who was also in the heroin business and that this information would help Melchionda in running the heroin trafficking business that was the subject of the indictment. Thus, it was reasonable for the District Court to conclude that the statement regarding Arias was made in furtherance of the conspiracy.

**B.**

Next, Arias contends that the District Court erred in failing to declare a mistrial after the jury was improperly exposed to evidence regarding the phone number of the phone that was on Arias's person when he was arrested. That phone number is significant because it connected Arias to multiple recorded phone calls in which drug transactions were discussed.

"When reviewing the denial of a motion for a mistrial, we consider the totality of the circumstances to determine whether the defendant has demonstrated the kind of clear prejudice that would render the court's denial of his motion for a mistrial a manifest abuse of discretion." United States v. Pagán-Ferrer, 736

- 20 -

F.3d 573, 586 (1st Cir. 2013) (citation omitted).  In determining whether a District Court abused its discretion in denying a motion for a mistrial, we look at three factors: "1) whether an appropriate curative instruction was issued, 2) whether the judicial response was timely, and 3) whether appellants successfully rebutted the presumption that the jury followed the judge's instructions."  Id.

The District Court determined that the jury had been improperly exposed to evidence regarding the phone number.  The District Court made that determination because, after the evidence was introduced, it came to light that the government's warrant application for the search of the phone to determine its phone number had failed to disclose that the government had already executed the search prior to filing the warrant application.  Nonetheless, the District Court gave a curative instruction, which directed the jury to disregard the exhibits and the testimony that indicated what the actual number of the phone was.  Thus, Arias's contention that the instruction was inadequate because it focused only on the exhibits -- and not the testimony -- rests on a mistaken premise.  Moreover, the District Court gave the instruction the day after the jury had been exposed to the excluded evidence, which we have previously held to be sufficiently timely.  See Pagán-Ferrer, 736 F.3d at 586-87.  Because Arias does not offer any argument to overcome the presumption that the jury followed the

judge's instruction to disregard the evidence at issue, we find no abuse of discretion in the District Court's decision not to declare a mistrial.

**IV.**

Finally, Arias challenges his sentence.  As we have noted, at sentencing, the District Court determined that Arias was responsible for trafficking between 400 grams and 700 grams of heroin.  That determination in turn formed the basis for the District Court's calculation of the applicable sentencing guidelines range, which the District Court relied upon in setting the sentence of 66 months' imprisonment.

"We review a district court's factual findings regarding drug quantity for clear error."  United States v. Mullins, 778 F.3d 37, 42 (1st Cir. 2015).  We find none.  The District Court based the drug quantity determination on the following findings: that Arias had 22.4 grams of heroin on his person when he was arrested (which Arias does not dispute); that 30.9 grams were found in Arias's apartment in the initial search; that 163.1 grams were found in Arias's apartment in a subsequent search; that Arias trafficked 302.4 grams in the nine weeks from June 15, 2013 to August 15, 2013, based on an estimated trafficking volume of 120 bags per week; and that Arias trafficked 178 grams in the 20 weeks between January 24, 2013 and June 7, 2013, based on an estimated trafficking volume of 30 bags per week.

The District Court did not clearly err in attributing to Arias the heroin -- totaling 30.9 grams -- found in the first search of Arias's apartment.  As we have explained before, "'possession' includes . . . joint as well as exclusive possession. The location of drugs or firearms in a defendant's home or car is a common basis for attributing possession to the defendant.  This is so even if the residence or room is shared by others." United States v. Zavala Maldonado, 23 F.3d 4, 7 (1st Cir. 1994).  And here, the record shows that officers tracked Arias driving the Murano to and from the apartment that he lived in before and after drug transactions.

The District Court also did not clearly err in attributing to Arias the heroin -- totaling 163.1 grams -- found in the second search of the apartment.  Arias argues that a co-conspirator had access to the apartment and could have moved drugs to the apartment after Arias's arrest.  But the District Court was entitled to conclude, as the government contended, that it was implausible that a co-conspirator would choose to store drugs in the now-vacant apartment of a co-conspirator who had just been arrested.

Arias next challenges the District Court's decision to attribute 302.4 grams to him for the nine-week period from June 15 to August 15.  The District Court reached this figure by determining that Arias trafficked 60 bags, twice a week, at a

- 23 -

weight of 0.28 grams of heroin per bag, over nine weeks. Arias contends that the District Court's calculation should have been based only on the thirteen drug transactions that appear on the record, which Arias argues involved an average quantity of 40 bags per transaction, with each bag having an average weight of 0.25 grams. But, "[d]rug quantity findings may be based on approximations as long as those approximations represent reasoned estimates of drug quantity." Mullins, 778 F.3d at 42 (citation omitted). And here, the District Court reasonably found that Arias engaged in two transactions per week from June 15 to August 15 involving 60 bags for each transaction. The District Court supportably based that finding on the PSR, which in turn based this estimate on a post-arrest estimate by Melchionda of how much heroin he purchased from Arias and on the content of intercepted phone calls and text messages from Arias. The District Court also reasonably concluded that 0.28 grams per bag was an appropriate average weight, because that was the average weight of the bags that were seized by the government. Thus, the District Court reasonably attributed 302.4 grams to Arias for the period between June 15 and August 15.

If the 302.4 grams are added to the 22.4 grams of heroin found on Arias's person when he was arrested, the 30.9 grams of heroin found in the first search of the apartment, and the 163.1 grams of heroin found in the second search of the apartment, the

total quantity of heroin attributable to Arias is 518.8 grams. Because this amount is above the 400-gram threshold, we need not consider Arias's challenge to the quantity of drugs attributed to him for the period before June 15.  But we do not find any clear error by the District Court with respect to its finding in that regard either.

The District Court reasonably estimated that over the twenty weeks between January 24 and June 7, Arias sold 60 bags per week, with a weight of 0.28 grams per bag, for a total of 336 grams.  See United States v. Cintron-Echautegui, 604 F.3d 1, 7 (1st Cir. 2010) (a sentencing court may make "plausible extrapolations from the available information").  The District Court based this estimate on the fact that the evidence showed that there were 598 phone calls between Melchionda and Arias during that period of time.  While these calls were not recorded, the District Court reasonably concluded that they constituted evidence of drug transactions because all of the phone calls between Melchionda and Arias that were recorded after June 15, once the wiretap became active, were drug-related.  For the sake of being "extremely conservative," the District Court then -- again, quite reasonably -- halved that estimate to 178 grams.  That estimate assumes a volume of 30 bags per week, an amount significantly lower than the 120 bags per week that the District Court determined that Arias sold after June 15.  See United States v. Rodríguez, 731

F.3d 20, 32 (1st Cir. 2013) ("We have often upheld drug-quantity findings, even if imprecise, if they were based upon conservative estimates or favorable assumptions.").

In sum, the District Court's findings more than suffice to justify its determination that Arias was responsible for conspiring to distribute between 400 grams and 700 grams of heroin. Arias's challenge to his sentence therefore fails.

**V.**

For the foregoing reasons, we **<u>affirm</u>**.