# United States Court of Appeals
## For the First Circuit

Nos. 16-1357, 16-1702

UNITED STATES OF AMERICA,

Appellee,

v.

JAMES PATTERSON,

Defendant, Appellant.

APPEALS FROM THE UNTIED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Jonathan Shapiro, with whom Mia Teitelbaum and Shapiro Weissberg & Garin, LLP were on brief, for appellant.
Alexia R. De Vincentis, Assistant United States Attorney, with whom, William D. Weinreb, Acting United States Attorney, was on brief, for appellee.

December 13, 2017

**BARRON**, **Circuit Judge**.  James Patterson appeals his federal convictions, and resulting sentence, for five counts of bank robbery in violation of 18 U.S.C. § 2113(a).  He argues that his convictions must be vacated because the District Court erred in denying his motions for (1) a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), regarding warrants that were issued to install Global Positioning System ("GPS") tracking devices; (2) the suppression of evidence obtained from those GPS tracking devices installed pursuant to those warrants; and (3) the suppression of evidence obtained as the result of his arrest.  We affirm.

## I.

The following facts relevant to the issues on appeal are not in dispute.  In the spring and summer of 2014, five banks in the Boston area were robbed.  In each incident, witnesses reported to law enforcement that the perpetrator covered his face, wore dark sunglasses and plastic gloves, and made verbal demands for cash.  By the fifth robbery, local law enforcement agents and the Federal Bureau of Investigation ("FBI") were investigating the string of robberies.

At three of the robberies, surveillance cameras captured images of a four-door vehicle that resembled a Volvo.  Following the fifth robbery, police for the City of Peabody, Massachusetts, received a report of the robber leaving the scene in an older

model, four-door, green Volvo sedan with a Massachusetts license plate. In addition, the Peabody police received a call on the day of the fifth robbery that reported suspicious activity occurring about four miles from the scene of the fifth robbery and thirty to forty minutes prior to that robbery. The suspicious activity that was reported involved a man wearing sunglasses, a hooded sweatshirt with the hood up, and gloves, who got out of a "faded black Volvo" and began walking toward a bank. The caller reported having said to the man that it was suspicious to enter a bank dressed that way and that the man then returned to his car. The caller also reported following the car and that the car had a Massachusetts license plate with the number 353PY1 and that the plate was possibly tied to the car with a piece of rope.

Law enforcement officers ran this license plate number through the Massachusetts Registry of Motor Vehicles database. The check of the license plate indicated that it was registered to a 1994 black Volvo. On the basis of all of this information, a detective for the police department of the Town of Stoughton, Massachusetts, who was part of the investigation, applied for a warrant from a magistrate in the Stoughton District Court in Massachusetts to install a GPS tracking device on that black Volvo.

The affidavit supporting the application stated, among other things, that there had been a report of a "suspicious vehicle observed in the area [of the fifth robbery] described as a black

Volvo, Massachusetts registration 353PY1." The only report that law enforcement had received concerning a black Volvo with that license plate number, however, was the report that placed that vehicle about four miles from the scene of the fifth robbery, thirty to forty minutes before that robbery occurred. Law enforcement had received a separate report of a Volvo being at the scene of the fifth robbery. But the person who made that report had stated that the Volvo was green -- rather than black -- and the person who made that report did not give that Volvo's license plate number, although the report did identify that vehicle as having a Massachusetts license plate.

The magistrate granted the warrant to install the GPS tracking device. The next day, while conducting surveillance on the 1994 black Volvo, police officers observed that the 353PY1 license plate had been removed from the vehicle and affixed to a tan Acura at the same address where the black Volvo was parked. The officers then sought and received a warrant to install a second GPS tracking device, this time on the Acura. The officers in seeking this second warrant relied on an affidavit that, with respect to the description of the reports regarding the vehicles that had been observed on the day of the fifth robbery, was identical to the one that had been used in applying for the first GPS tracking device warrant.

Following the issuance of the two warrants and the installation of the GPS tracking devices on both vehicles, law enforcement surveilled both vehicles -- the black Volvo and the Acura -- intermittently for the next thirteen days. During the surveillance, the cars were observed passing several banks in the area, and slowing down in front of each bank as they passed. In addition, law enforcement reported that during their surveillance of the vehicles, in several incidents, Patterson was seen as a passenger, turning his head toward the bank as the vehicle he was in at the time passed.

On August 4, 2014, FBI agents watched one of these vehicles -- with Patterson in it as a passenger -- again drive slowly past a number of banks before finally pulling into a parking lot near a bank. The agents observed Patterson change clothes in his vehicle and emerge dressed in dark pants, a dark sweatshirt, a hat, sunglasses, and clear gloves. The agents then saw him begin walking toward the nearby bank, before he turned and began walking back toward the car.

At that point, a Special Weapons and Tactics team from the FBI arrested Patterson. As Patterson raised his hands on the command of the FBI agents, a black BB gun fell from Patterson's person to the ground. After being given a Miranda warning, see Miranda v. Arizona, 384 U.S. 436, 444 (1966), Patterson made statements to the police.

On December 4, 2014, Patterson was indicted in the United States District Court for the District of Massachusetts on five counts of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of attempted bank robbery in violation of 18 U.S.C. § 2113(a), all committed while on supervised release in violation of 18 U.S.C. § 3147. Prior to trial, Patterson filed a motion for a Franks hearing to challenge the state court warrants for the installation of GPS tracking devices on the black Volvo and the Acura on the ground that the affidavits supporting each warrant application contained an erroneous statement by relating that the Volvo seen "in the area" of the fifth robbery was a black Volvo that had the license plate number 353PY1.

The District Court concluded that the "affidavit [was] not a shining example of attention to detail" and contained an "erroneous" statement, given that the only Volvo reportedly seen at the site of the fifth bank robbery was green and was not identified as having that license plate number and that the black Volvo with that license plate was reportedly seen four miles away and some thirty to forty minutes before the fifth robbery occurred. Nevertheless, the District Court denied the motion after concluding that the erroneous statement was not made "knowingly or in reckless disregard for the truth." The District Court explained in reaching that conclusion that "there was simply no incentive" for the officer to make the misstatement intentionally because, if

the affidavit had correctly described the two separate reports, then the magistrate "would still have had ample justification to find probable cause."

Patterson also filed motions to suppress the evidence obtained through the GPS tracking devices and as a result of his arrest. Patterson contended that the evidence must be suppressed because there was not probable cause to support either the issuance of the GPS tracking device warrants or his arrest. The District Court denied these motions, too.

The District Court reasoned that the information contained in the affidavit supporting each warrant application regarding the reports of multiple sightings of a "Volvo of similar appearance" near some of the bank robberies and the witness's report of the suspicious activity involving a black Volvo "only 30 or 40 minutes before, and less than four miles from" the fifth robbery supported a finding of probable cause for issuance of the warrants to install the GPS tracking devices. The District Court also concluded that there was probable cause to arrest Patterson based on the observations by law enforcement officers of Patterson "casing" banks and, before walking toward a bank, changing into clothing that matched descriptions of the wardrobe worn by the robber at each of the other banks that had been robbed. The District Court thus denied Patterson's suppression motions and the case proceeded to trial.

At trial, Patterson renewed his motions to suppress, which the District Court again denied. Following the jury's verdict of guilty on all five counts of bank robbery,[1] Patterson was convicted and sentenced to 121 months of incarceration and three years of supervised release on each count. Because he was on supervised release due to his sentence for a prior conviction at the time that he committed the bank robberies, he was also found to be in violation of the conditions of the terms of his release and sentenced to an additional twenty-four months of imprisonment to be served consecutively.

Patterson now appeals the denial of his motion for a Franks hearing and the denial of his two suppression motions. And, on those grounds, he seeks to have his convictions and sentence vacated.

**II.**

Patterson contends first that the District Court erred in denying his motion for a Franks hearing. In assessing the denial of a motion for a Franks hearing, "we review factual determinations for clear error and the probable cause determination de novo." United States v. Arias, 848 F.3d 504, 511 (1st Cir. 2017).

---

[1] For reasons unrelated to this appeal, the District Court granted Patterson's motion for acquittal on count six, attempted bank robbery.

To establish the predicate for holding a Franks hearing, the defendant must make two "substantial preliminary showing[s]." Franks, 438 U.S. at 155.  A defendant must first make a substantial showing that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit."  Id. at 155-56.  With respect to this initial showing, "[m]ere inaccuracies, even negligent ones, are not enough to warrant a Franks hearing." United States v. Santana, 342 F.3d 60, 66 (1st Cir. 2003) (alteration in original) (internal citation omitted).

A defendant must also make a substantial showing that the "allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 156.  This inquiry considers whether, "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause."  Id. at 156.  For, if what remains is insufficient, then the warrant "must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."  Id.

In denying Patterson's motion for a Franks hearing, the District Court ruled that Patterson had failed to make a substantial preliminary showing that the misstatement -- that a black Volvo with the key license plate number was seen "in the area" of the fifth robbery -- had been intentionally or recklessly

- 9 -

made.  In so concluding, the District Court explained that, even if the affidavit had correctly described what happened, a magistrate would still have had "ample justification to find probable cause."  The District Court thus concluded that there was "simply no incentive" for the officer to have intentionally made the misstatement in the affidavit, and thus that Patterson had failed to make a substantial preliminary showing that the misstatement was made "knowingly and intentionally, or with reckless disregard for the truth."  Id. at 155.

In light of this ruling below, the key issue on appeal concerns whether Patterson made the requisite showing that the misstatement was made intentionally rather than, as the District Court concluded, merely out of carelessness.  But, as to that critical point, Patterson comes up short.

Patterson argues first that the misstatement must have been made intentionally[2] because the statement appears in the affidavit twice.[3]  But, the mere fact that the record reveals the

---

[2] Patterson makes no argument that the statement was made recklessly.

[3] The government responds that Patterson's Franks argument is waived because his opening brief points to no specific evidence that was used against him at trial that stemmed from the installation of the GPS tracking devices.  Below, however, Patterson argued that because his surveillance and arrest were made possible by the GPS tracking, the fruits of his surveillance and arrest should be suppressed.  Given this argument below, we assume, favorably for Patterson, that his argument on this point is not waived.

misstatement was repeated in the affidavit does not constitute a substantial preliminary showing that the misstatement was made intentionally. If the officer made a negligent mistake once in describing the vehicle and its whereabouts in preparing the affidavit, then it would be unremarkable that he would have repeated the mistake. So the repetition of the error does little to show that it was made intentionally rather than mistakenly.

Patterson also points to the fact that the officer who prepared the affidavit had access, at the time that he completed the affidavit, to the two police reports that described the two separate reports of the Volvos. And, Patterson notes, those police reports did not themselves contain the misstatement that the officer included in the affidavit. Patterson thus contends that, given that the misstatement was helpful to the government's case for obtaining the warrant, he made a substantial preliminary showing that the misstatement was intentionally made by pointing to the fact that the officer in preparing the affidavit had before him the correct information about the exact reported location of the black Volvo with the license plate and yet included the misstatement regarding that report nonetheless.

But, as the District Court noted, even if the affidavit had made clear that the Volvo with the license plate registered to the black Volvo was not reported to be present at the scene of the fifth robbery, there would still have been an "ample" basis for

- 11 -

issuing the warrant. After all, had the affidavit related the facts regarding the Volvo's whereabouts precisely as they were set forth in the police reports, the magistrate would still have been informed that a Volvo with that license plate was reported "only 30 or 40 minutes earlier and less than four miles away" from the scene of the fifth bank robbery. And, given what the police reports stated, the magistrate also would have been informed that the occupant of that vehicle with those plates was acting suspiciously less than an hour before the fifth robbery and at the relatively nearby bank, while that suspect was wearing clothing that was at least similar to the clothing worn by the person reportedly seen at the site of the fifth bank robbery.

In addition, the magistrate would have been informed that the description of this suspect was also quite similar to the description of the suspect reportedly seen at a number of the other robberies in the string. Moreover, the magistrate would have been informed that a car that was possibly a black Volvo of similar model and year was seen at these earlier robberies, too.

In light of these aspects of the record, it simply requires too much speculation to infer from the mere fact that the affidavit erroneously described the detailed police reports that the affiant made the error intentionally rather than carelessly. Accordingly, we conclude that the District Court did not err in denying Patterson's motion for a <u>Franks</u> hearing based on

Patterson's failure to make the requisite preliminary showing. See United States v. Castillo, 287 F.3d 21, 26 (1st Cir. 2002).

## III.

Patterson separately contends that, because the affidavit supporting the applications for the warrants to install the GPS tracking devices failed to relate facts that could support a finding of probable cause to suspect the black Volvo's or the tan Acura's connection to the bank robberies, the District Court erred in denying his motion to suppress the evidence obtained from the installation of the GPS tracking devices. But, we do not agree.

Our review is de novo, but "[i]n a doubtful or marginal case, the court defers to the issuing magistrate's determination of probable cause." United States v. Barnard, 299 F.3d 90, 93 (1st Cir. 2002). And here, the case for finding probable cause on the basis of the affidavit supporting the warrant is hardly marginal. For while Patterson contends that there was "simply no basis" to conclude from the affidavit that the black Volvo with the license plate 353PY1 was "involved in any prior bank robbery," he rests this contention almost entirely on the fact that the photographs taken by surveillance cameras at the scene of several of the robberies captured images of a dark-colored sedan that could have been a Volvo but did not identify the vehicle's license plate. Patterson overlooks, however, the fact that the affidavit

described a number of facts to provide a reasonable basis for connecting the black Volvo with the license plate 353PY1 -- reportedly seen "in the area" of the fifth robbery -- to not only that robbery but others in the string.

In particular, the affidavit reported that a review of the surveillance video taken during the fourth robbery showed that "[i]t appears that the getaway vehicle is a 4 door vehicle color black, possibly a Volvo."  And the affidavit further explained that a local Volvo dealer had been shown a photo of the vehicle from this video and stated that it "could possibly be a 1991,[ ]1992 or 1994 Volvo, model number 940 or 960."

In addition, the affidavit explained that a witness reported the suspect at this fourth robbery to be a "black male . . . wearing a white jogging suit, described as approximately 5-11 to 6-0 [inches] tall, wearing a black baseball style hat, dark sunglasses with a bandana covering his face and clear plastic gloves . . . . "  And the affidavit then went on to state that this description of the suspect of this fourth robbery was similar to the description of the suspect at a third bank robbery, as that suspect was described as a black male, wearing a hat, dark sunglasses, clear plastic gloves, and covering his face.

What is more, the affidavit stated that a still photo taken from surveillance cameras near the bank involved in either the first or second robbery in the string depicted "a four door

- 14 -

vehicle, possibly a Volvo, color black." And the affidavit stated that the vehicle depicted in this photograph was identified by the service manager at the local Volvo dealer as appearing to be a "1994 or 1995 Volvo, model 940 or 960 GLE."

The affidavit thus had related facts tying a black, mid-1990s Volvo to at least three of the robberies that preceded the fifth. And the affidavit then explained that on the day of the fifth robbery, "a witness reported seeing a suspicious male wearing aviator type sunglasses, a hooded sweatshirt and gloves" get out of a black Volvo and "act[] suspicious[ly] in the area of [a] TD bank." According to the affidavit, after the "suspicious male" saw the witness, he left the area of the bank in the black Volvo. Shortly thereafter, the affidavit reported, another bank in the area "was robbed by a male party [w]ith the same clothing description previously seen at the TD bank . . . . " The affidavit went on to state that at that fifth robbery, "there was a suspicious vehicle observed in the area described as a black Volvo, Massachusetts registration 353PY1." The affidavit thus facially provided sufficient facts to link the black Volvo with license plate 353PY1 with several of the robberies, including the fifth one, notwithstanding that the affidavit did not report that this vehicle was seen by any witness or depicted in surveillance photographs as being at the scene of that robbery.

Nor was, as Patterson urges, the affidavit's statement that the witness's report of the "suspicious male" seen with the black Volvo on the day of the fifth robbery uncorroborated. See United States v. Trinh, 665 F.3d 1, 10 (1st Cir. 2011) (articulating a "nonexhaustive list of factors" for determining whether information in an affidavit is corroborated). The affidavit states that, before filing the warrant applications, law enforcement officials were able to corroborate certain details of the witness's report. In particular, the affidavit states that law enforcement ran the license plate of the black Volvo that the witness had reported seeing through a database that showed that the license plate was registered to a 1994 black Volvo and also conducted physical surveillance that revealed that there was in fact a black Volvo with that license plate.

That leaves Patterson with only one remaining argument: that there was no reference to a vehicle of any kind in the report of the third robbery that the affidavit referenced. Patterson argues that without evidence directly linking the Volvo with the license plate 353PY1 to each robbery there was no probable cause to issue the warrant.

But we do not see why. For there to be probable cause to issue the warrant to install the GPS tracking device on the black Volvo, the affidavit need not report that the vehicle had been seen at each robbery, at least when there is a link between

- 16 -

the various robberies that is independent of the vehicle itself --

here, the similarities between the descriptions of the robber.  Of

course, Patterson does also contend that there is no such link, by

arguing that the reports discussed in the affidavit describing the

robber's height, weight, and wardrobe at each robbery varied too

greatly to support the inference that the same person committed

each.  But, based on the similarities in the reported description

of the suspect seen at these robberies that we have discussed

above, we disagree.

We thus reject Patterson's contention that the

supporting affidavit did not provide probable cause for the

warrants for the installation of the GPS tracking devices.  And,

accordingly, we affirm the denial of his motion to suppress any

evidence that may have been obtained in consequence of the issuance

of those warrants.[4]

**IV.**

We turn, finally, to Patterson's contention that the

District Court erred in denying his motion to suppress evidence

---

[4] The government argues that Patterson's appeal of the District Court's denial of his motion to suppress the evidence obtained from the installation of the GPS tracking devices fails because Patterson has not identified any evidence from the GPS tracking devices that was used against him at trial, and thus any error was harmless.  Because we determined that the District Court did not err in concluding that the warrant applications supported a finding of probable cause, and thus the installation of the GPS tracking devices was lawful, we need not, and do not, reach this issue.

obtained as a result of his arrest.  To effectuate a warrantless arrest, law enforcement officers must, on the basis of "reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime."  United States v. Young, 105 F.3d 1, 6 (1st Cir. 1997).  Our review of the legal conclusion as to the existence of probable cause to make the arrest is de novo.  United States v. Capelton, 350 F.3d 231, 240 (1st Cir. 2003).

Patterson argues that the probable cause standard was not met here.  He contends that the FBI agents' belief that he had been "casing" banks in the area was "speculati[ve]" and that the fact that he had changed clothes and walked toward the bank before turning around was insufficient to support a finding of probable cause for attempted bank robbery.  He contends that the descriptions of the perpetrators in the string of prior robberies varied too greatly to tie him to those robberies in a way that would support a finding of probable cause to arrest him for those crimes.  He further argues that he lacked the requisite intent to commit a bank robbery necessary to prove the element of attempt because the evidence did not show that he did more than "merely think about" committing a robbery.  And, finally, he contends that the evidence showed that he turned and walked away from the bank just prior to being arrested, thereby further indicating that he was not attempting to rob that bank.  As a result, he argues, the

evidence of his BB gun, clothing, and statements made after his arrest should be suppressed.

The government points out in response that Patterson was arrested for attempted robbery under Massachusetts law, even though he was ultimately charged with federal crimes. And thus the government contends that, because Patterson makes no argument as to why the officers lacked probable cause to arrest him for that state law crime, and instead argues only that there was not probable cause to arrest him for the federal crimes for which he was later charged, Patterson has waived the argument that there was no probable cause to arrest him.

But, even if we set aside the waiver argument -- which Patterson does not address -- Patterson's challenge still fails. The record shows that law enforcement had watched Patterson "case" various banks in the area for nearly two weeks prior to his arrest, had noted the similarities between Patterson's car and the car seen at the previous robberies, and, just before the arrest, had watched him change into clothes consistent with the type of clothing worn by the robbers in the previous string of bank robberies: sunglasses, gloves, and head and face coverings. And while the government does not dispute that Patterson turned around while he was walking toward the bank just prior to being arrested in the bank's parking lot, evidence of abandonment does not in and of itself suffice to negate evidence of attempt. See United States

v. <u>Turner</u>, 501 F.3d 59, 69 (1st Cir. 2007) ("[T]he fact that [the defendant] may have detected the FBI's surveillance and tried to abandon the attempt at the last moment is irrelevant."); <u>see generally</u> <u>United States</u> v. <u>Chapdelaine</u>, 989 F.2d 28, 33 (1st Cir. 1993) (holding that "casing [a] bank, stealing a car, and arriving armed at the bank constituted a substantial step toward robbery" sufficient for a conviction for attempted robbery (internal citation omitted)).

We thus agree with the District Court that Patterson's arguments about the lack of evidence to support a finding of probable cause "strain[] credulity." Accordingly, the District Court did not err in denying Patterson's motion to suppress evidence obtained as a result of his arrest.

**V.**

For the foregoing reasons, the decision of the District Court is **<u>affirmed</u>**.