# United States Court of Appeals
## For the First Circuit

No. 17-1284

UNITED STATES OF AMERICA,

Appellee,

v.

JOHN A. BARBOSA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Anthony E. Fuller, with whom Alexandra G. Watson and Hogan Lovells US LLP were on brief, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Andrew E. Lelling, United States Attorney, was on brief, for appellee.

July 16, 2018

**SELYA**, **Circuit Judge**. This appeal resembles a play in two acts. The first act deals with whether the district court erred in refusing to order a pretrial hearing to test the sufficiency of the probable cause allegations undergirding an arrest warrant. The second act deals with whether the district court erred in classifying the defendant as an armed career criminal and sentencing him under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). As the final curtain descends, we find it manifest that the district court erred in neither respect. Accordingly, we affirm the defendant's conviction and sentence.

## I. BACKGROUND

We rehearse the relevant facts, which are largely undisputed (even though the parties fiercely contest the inferences to be drawn from those facts). In the early afternoon of Saturday, August 8, 2015, Jillian Poeira and her mother Ana Poeira walked into a police station in New Bedford, Massachusetts, to file a report implicating defendant-appellant John A. Barbosa. Jillian and the defendant had lived together (with Jillian's two children from a previous relationship) before parting ways in January of 2015. Following the break-up, Jillian and her children moved in with Jillian's parents.

When Jillian and Ana arrived at the police station on August 8, they spoke to a New Bedford police officer, Gregory

Sirois, and described certain events that had transpired earlier that morning. According to the application for a criminal complaint (the Application), completed and signed that afternoon by Officer Sirois,[1] the two women reported that, around 7:00 a.m., the defendant appeared unexpectedly at their home. Ana answered the door, and the defendant pushed his way inside and demanded to speak to Jillian. Officer Sirois wrote in the Application that "Ana Poeira pushed [the defendant] against the wall and held him there and as she did he raised a black firearm into the air and pointed it [at] both females," threatening to kill everyone in the house. The Application went on to relate that the altercation ended after Ana "managed to push [the defendant] back out the door." The defendant then departed.

Officer Sirois asked the women why they had waited nearly six hours to report the incident. Jillian responded that she was scared, and Ana added that she had a doctor's appointment that morning. The officer then checked for any outstanding warrants concerning either Jillian or the defendant but found none. He did, however, find an extensive Board of Probation record for the defendant, which revealed a number of "firearms charges and other violent crimes."

---

[1] Unless otherwise specifically indicated, all of the facts occurring prior to the issuance of the arrest warrant were memorialized in the Application.

- 3 -

Officer Sirois proceeded to assist Jillian in preparing a complaint for an emergency restraining order against the defendant.  In support, Jillian wrote and signed an affidavit (the text of which was not included verbatim in the Application), in which she described the August 8 incident in her own words.  The affidavit stated that the defendant had arrived at the house between 8:00 a.m. and 9:00 a.m.  When the defendant knocked and asked to speak with Jillian, Ana opened the door only a crack and told the defendant that Jillian had nothing to say to him.  According to Jillian's affidavit, the defendant pushed his way into the house as Ana tried to hold him back; Jillian's four-year-old son yelled that the defendant had a gun; and Jillian — who had been about to call 911 — dropped the phone and ran to help her mother push the defendant out the door.  As the defendant left, he told Jillian that if she called the police, he would kill everyone in the house.

Jillian told Officer Sirois that the defendant drove a gray Volvo and frequented the New Bedford public library.  The officer confirmed that a gray Volvo was registered in the defendant's name and put out a "be on the look out" notice for the car.

Two days later, detectives from the New Bedford Police Department followed up on the complaint against the defendant.

They confirmed that an arrest warrant had been issued on a charge of armed home invasion — a warrant premised on the Application. See Mass. Gen. Laws ch. 265, § 18C. That afternoon, the police executed the arrest warrant at the public library and took the defendant into custody. During the arrest, they seized a bag containing a firearm and ammunition.

On November 12, 2015, a federal grand jury sitting in the District of Massachusetts returned a single-count indictment charging the defendant with being a felon in possession of a firearm and ammunition. See 18 U.S.C. § 922(g)(1). In due season, the defendant moved to suppress the firearm and ammunition found in his possession. He alleged, inter alia, that the arrest warrant had been issued without a sufficient showing of probable cause and that the firearm and ammunition were fruits of the allegedly unconstitutional warrant. The government opposed the motion, and the district court denied it. See United States v. Barbosa, 2016 WL 3976559, at *1 (D. Mass. July 22, 2016). Undaunted, the defendant moved for a Franks hearing, see Franks v. Delaware, 438 U.S. 154, 155-56 (1978), seeking an opportunity to challenge the underpinnings of the arrest warrant in a pretrial proceeding. The district court denied this motion as well. See United States v. Barbosa, 2016 WL 6609174, at *1 (D. Mass. Nov. 7, 2016).

On December 19, 2016, the defendant entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), reserving his right to appeal both the district court's denial of his motion to suppress and its denial of his motion for a Franks hearing. Following the defendant's guilty plea, the probation department prepared a presentence investigation report recommending that the defendant be sentenced as an armed career criminal under the ACCA. In support, the probation department represented that the defendant, in the idiom of the ACCA, had at least three prior convictions for "violent felon[ies]" and/or "serious drug offense[s]." 18 U.S.C. § 924(e). The probation department identified four Massachusetts convictions — a 1993 conviction for possession with intent to distribute a controlled substance; a 1995 conviction for assault with a dangerous weapon (ADW); a 2000 conviction for possession with intent to distribute a controlled substance; and a 2007 conviction for armed assault with intent to murder (AAIM) — as potential predicate offenses. Classification as an armed career criminal had potentially unattractive consequences for the defendant: the ACCA requires a mandatory minimum fifteen-year term of incarceration for persons who have at least three qualifying convictions for predicate offenses. See id. § 924(e)(1).

At sentencing, the district court determined that the defendant's 1993, 1995, and 2000 convictions comprised convictions for ACCA predicate offenses.[2]  Classifying the defendant, over his objection, as an armed career criminal, the court sentenced him to a fifteen-year term of immurement.  This timely appeal followed.

## II. ANALYSIS

In this venue, the defendant, ably represented, does not directly challenge the district court's denial of his motion to suppress.  He does challenge, though, the court's denial of his motion for a <u>Franks</u> hearing.  In addition, he challenges his classification as an armed career criminal and, thus, his sentence. We bifurcate our analysis, first addressing the defendant's <u>Franks</u> claim and then addressing his claim of sentencing error.

### A. <u>Franks Hearing.</u>

We start with the defendant's challenge to the denial of his motion for a <u>Franks</u> hearing.  In reviewing such an order, we appraise the district court's factual findings for clear error and evaluate its legal conclusions de novo.  <u>See</u> <u>United States</u> v. <u>Patterson</u>, 877 F.3d 419, 424 (1st Cir. 2017); <u>United States</u> v.

---

[2] The district court also found — over the government's objection — that the defendant's 2007 AAIM conviction did not qualify as an ACCA predicate-offense conviction.  In fairness to the district court, we note that it made this determination prior to our decision in <u>United States</u> v. <u>Edwards</u>, 857 F.3d 420, 427 (1st Cir.) (holding that AAIM constitutes a violent felony under the ACCA), <u>cert</u>. <u>denied</u> 138 S. Ct. 283 (2017).

- 7 -

Arias, 848 F.3d 504, 511 (1st Cir. 2017). The district court's findings of fact will be deemed clearly erroneous if — and only if — a reviewing court, after considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessmer, 470 U.S. 564, 573 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In Massachusetts, police officers need not submit an affidavit in support of an arrest warrant. See Burke v. Town of Walpole, 405 F.3d 66, 78 (1st Cir. 2005) (describing procedure). Instead, they may submit an application for a criminal complaint, which must reduce to writing the facts supporting probable cause. See Mass. Gen. Laws ch. 276, § 22. The ensuing arrest warrant must nonetheless be signed by the official issuing it, see Mass. R. Crim. P. 6(b), and that signature satisfies the Fourth Amendment's oath or affirmation requirement, see Burke, 405 F.3d at 78-79. Here, the arrest warrant was initialed by a judge of the New Bedford District Court, and the defendant has not challenged the sufficiency of the oath or affirmation on appeal.

Beyond the oath or affirmation, the Fourth Amendment demands that an application for an arrest warrant contain

- 8 -

sufficient information to allow the issuing official — whom, for ease in exposition, we shall call "the magistrate" — to "make a practical, common-sense decision whether, given all the circumstances set forth in the [application] before him . . . there is a fair probability" that a crime has been committed. Illinois v. Gates, 462 U.S. 213, 238 (1983). An application "supporting a . . . warrant is presumptively valid." United States v. Gifford, 727 F.3d 92, 98 (1st Cir. 2013). Under certain circumstances, however, a defendant may be able "to rebut this presumption and challenge the veracity" of the warrant application at a pretrial hearing. United States v. McLellan, 792 F.3d 200, 208 (1st Cir. 2015). Such a hearing is eponymously called a Franks hearing. See, e.g., id.; United States v. Hicks, 575 F.3d 130, 135-36 (1st Cir. 2009).

The Franks Court held that if a defendant can show, by a preponderance of the evidence, that there were false statements included in the warrant affidavit and that, with the "false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the . . . warrant must be voided and the fruits . . . excluded to the same extent as if probable cause was lacking on the face of the affidavit."[3]  438

---

[3] Although Franks dealt with an affidavit in support of a search warrant, the same principles apply to an application in support of an arrest warrant where the application serves the same

- 9 -

U.S. at 156. Even so, a defendant is not entitled to a <u>Franks</u> hearing as of right.

Instead, he must make a threshold showing sufficient to persuade the district court that a reasonable basis exists for believing that such a hearing is indicated. <u>See</u> <u>United States</u> v. <u>Gordon</u>, 871 F.3d 35, 51 (1st Cir. 2017); <u>Arias</u>, 848 F.3d at 510-11. A defendant who makes an adequate threshold showing is entitled, on timely motion, to a pretrial determination. <u>See</u> <u>Arias</u>, 848 F.3d at 511; <u>United States</u> v. <u>Graf</u>, 784 F.3d 1, 3 (1st Cir. 2015).

We described this threshold showing in <u>United States</u> v. <u>Tanguay</u> (<u>Tanguay I</u>):

> In <u>Franks</u>, the Supreme Court established that, under the Fourth and Fourteenth Amendments, a defendant is entitled to an evidentiary hearing to test the veracity of a warrant affidavit if he can make a substantial showing that the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, which statement was necessary to the finding of probable cause. <u>See</u> 438 U.S. at 155-56, 98 S. Ct. 2674. Suppression of the evidence seized is justified if, at such a hearing, the defendant proves intentional or reckless falsehood by preponderant evidence and the affidavit's creditworthy averments are insufficient to establish probable cause. <u>See</u> <u>id.</u> at 156, 98 S. Ct. 2674.

---

function as an affidavit. <u>See</u> <u>United States</u> v. <u>Laurent</u>, 607 F.3d 895, 903 (1st Cir. 2010); <u>United States</u> v. <u>Colkley</u>, 899 F.2d 297, 299-302 (4th Cir. 1990).

Material omissions from a warrant affidavit also may furnish the basis for a successful Franks challenge. See United States v. Hadfield, 918 F.2d 987, 992 (1st Cir. 1990). The required showing is two-fold: first, the omission must have been either intentional or reckless; and second, the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause. See United States v. Castillo, 287 F.3d 21, 25 & n.4 (1st Cir. 2002); see also United States v. Tate, 524 F.3d 449, 456-57 (4th Cir. 2008) ("A 'literally true' affidavit . . . can be intentionally misleading if it deliberately omitted material facts which, when included, would defeat the probable cause showing and thus render false the original 'literally true' affidavit."). Because there is no requirement that every shred of known information be included in a warrant affidavit, the omission of a particular detail, without more, is not enough to satisfy the mens rea element of the Franks test. See United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir. 1990). Rather, an omission triggers the exclusionary rule only if it is "designed to mislead, or . . . made in reckless disregard of whether [it] would mislead, the magistrate" in his appraisal of the affidavit. Id. at 301 (emphasis omitted).

Recklessness may be inferred directly from the fact of omission only if "the omitted information was critical to the probable cause determination." Burke v. Town of Walpole, 405 F.3d 66, 81 (1st Cir. 2005) (emphasis supplied) (internal quotation mark omitted). Negligent omissions — even negligent omissions of highly probative information — do not satisfy this strict standard. See Franks, 438 U.S. at 171, 98 S. Ct. 2674; see also United States v. Melvin, 596 F.2d 492, 499-500 (1st Cir. 1979) (affirming finding that omission of key witness's recantation was merely negligent, not reckless, because of affiant's

good-faith belief that recantation was incredible).

Tanguay I, 787 F.3d 44, 48-49 (1st Cir. 2015).

Against this backdrop, we turn to the defendant's attempt to persuade the district court (and, now, this court) that he has made a threshold showing sufficient to entitle him to a Franks hearing. To begin, the defendant argues that Officer Sirois intentionally or recklessly made false statements in the Application and, in the bargain, omitted several clusters of material information. He further argues that these false statements and material omissions were so portentous as to dissipate any showing of probable cause. Specifically, the defendant notes that Officer Sirois understated the defendant's weight by 40 pounds; omitted Ana's age; omitted any reference to Jillian's statement (made in her affidavit in support of her request for a restraining order) that Ana and the defendant were pushing each other; and neglected to mention that Ana willingly opened the door for the defendant. Had the Application been accurate and complete, the defendant submits, it would have presented the magistrate with a truly implausible tale: that a 59-year-old grandmother invited an armed man who was younger, stronger, and heavier into her home and — when he turned violent — was able to overpower him and force him out the door. Given the implausibility of this scenario, the defendant insists that a

- 12 -

reasonable magistrate could not have found probable cause to believe that an armed home invasion had transpired.

There is, however, a rather large fly in the ointment. Even if we assume that the challenged statements and omissions were either deliberate or reckless — a matter that we need not reach — it is clear that correcting the defendant's weight and adding in the omitted information would not have vitiated the finding of probable cause. Neither the alleged misstatement about the defendant's weight nor the omitted information was critical to the finding of probable cause. We explain briefly.

Let us say, for argument's sake, that we accept the defendant's premise: the notion that a 59-year-old grandmother could have overpowered a younger, stronger man (6'1" in height, weighing 180 pounds, and brandishing a gun) seems hard to swallow. Even so, this premise lacks any bite because it rests on a misreading of the Application.

To gauge the sufficiency of the Application, we must determine whether the totality of the revealed circumstances makes out a showing of probable cause, even with false facts stripped away, inaccurate facts corrected, and omitted facts included. See id. at 49-50; Hicks, 575 F.3d at 138-39. As applied here, this approach requires that the Application be reformed to show the defendant's correct weight (approximately 180 pounds), Ana's age

(59), and the fact that the two were pushing each other.  But even with these emendations, the totality of the circumstances disclosed in the Application remains sufficient to establish probable cause to believe that an armed home invasion had taken place.

At bottom, the defendant's claim is that no reasonable magistrate would have believed Jillian's and Ana's accounts because it is implausible to think that Ana overpowered the defendant.  But this claim frames the question in the wrong way.  Taking the Application's factual content as a whole, the age and weight disparity between Ana and the defendant, even when coupled with the fact that they were "pushing each other," does not imply that Ana physically overpowered the defendant.  The incremental facts, without more, simply do not compel a reasonable inference that the defendant was resisting Ana with any degree of force.  Far from being implausible, the Application — even when reformed to meet the defendant's objections about false statements and material omissions — would continue to give a reasonable magistrate probable cause to believe that the events transpired as Ana and Jillian had described them.

In reaching this conclusion, we are mindful that an inquiry into the existence vel non of probable cause invariably hinges on the facts and circumstances of each particular case.

See B.C.R. Transp. Co. v. Fontaine, 727 F.2d 7, 10 (1st Cir. 1984). Nevertheless, some generalities apply. One such generality is the recognition that "probable cause determinations predicated on information furnished by a victim are generally considered to be reliable." Id. In other words, a magistrate may justifiably rely on victims' credible accounts to support a finding of probable cause. See Forest v. Pawtucket Police Dep't, 377 F.3d 52, 57 (1st Cir. 2004); cf. United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984) (finding officer justifiably relied on statement of private citizen who came forward on his own). So it is here.

The short of it is that the putative discrepancies on which the defendant relies "are tangential." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002). The correction of the alleged factual inaccuracies and the inclusion of the omitted facts, taken together, do not dispel the reasonable inference of probable cause to believe that the defendant had committed an armed home invasion.

Of course, there is one further allegedly omitted fact: the defendant claims that the Application improperly glosses over the fact that Ana willingly opened the door, knowing that the defendant was on the other side. The omission of this fact is material, the defendant says, because its inclusion would show that the elements of armed home invasion were not satisfied. In

support, the defendant declares that an armed home invasion requires that the initial entry into the home be unlawful or, at least, nonconsensual — a requirement that, in his view, could not be satisfied so long as Ana willingly opened the door to allow the defendant entry.

The defendant is whistling past the graveyard. His description of the elements of armed home invasion misapprehends Massachusetts law, which does not make unlawful or non-consensual entry an element of the offense of armed home invasion.[4] The defendant's contrary argument rests squarely on the decision in Commonwealth v. Putnam, 914 N.E.2d 969 (Mass. App. Ct. 2009). That case, however, cannot support the weight that the defendant piles upon it.

With respect to the crime of armed home invasion, Putnam makes pellucid that "[p]urported consent [to entry] cannot be considered legally significant unless the occupant has been made aware that the person at the door is armed with a dangerous weapon and is about to commit an assault once inside." Id. at 973 (quoting

_____

[4] Under Massachusetts law, armed home invasion has four elements: "the defendant (1) 'knowingly entered the dwelling place of another'; (2) 'knowing or having reason to know that one or more persons are present within'; (3) 'while armed with a dangerous weapon'; and (4) 'used force or threatened the imminent use of force upon any person within such dwelling place . . . .'" Commonwealth v. Doucette, 720 N.E.2d 806, 809 (Mass. 1999) (quoting Mass. Gen. Laws ch. 265, § 18C) (alterations omitted).

Commonwealth v. Mahar, 722 N.E.2d 461, 469 (Mass. 2000)).  Here, there is no evidence that Ana knew either that the defendant was armed or that he was about to commit an assault when she opened the door for him.  Thus, the fact that Ana willingly opened the door was not in any way "critical to the probable cause determination."  Tanguay I, 787 F.3d at 49 (emphasis in original) (quoting Burke, 405 F.3d at 81).

The defendant has a fallback position:  he challenges the denial of a Franks hearing on the basis of what he maintains is Officer Sirois's unjustified failure to conduct a fuller investigation.  This failure, the defendant says, occurred despite "obvious reasons" to doubt the story told by Jillian and Ana.  This claim does not withstand scrutiny.

As a general rule, a police officer planning to apply for a warrant has no duty to "investigate a matter fully."  Id. at 51.  Nor is a police officer — as a condition precedent to procuring a warrant — compelled "to 'exhaust every possible lead, interview all potential witnesses, and accumulate overwhelming corroborative evidence.'"  Id. (quoting Beard v. City of Northglenn, 24 F.3d 110, 116 (10th Cir. 1994)).  When an officer has no plausible reason to doubt the veracity of the information that he plans to include in the warrant application, a failure to take further steps to verify that information is not reckless.  See id. at 52.

To be sure, this "general rule — like virtually every general rule — admits of at least one exception." Id.  In Tanguay I, we held that, in limited circumstances, a right to a Franks hearing may arise out of an officer's failure to include in a warrant application facts not known to her at the time but which would have been discovered had she investigated further.  See id. To pave the way for this exception, though, the officer must have had "obvious reasons" to doubt either the veracity of the allegations or the credibility of the person making the allegations — doubts of "such a magnitude that her failure to conduct an additional inquiry evinced a reckless disregard for the truth." Id. at 54.  Faced with such a "red flag," an officer may (depending on the circumstances) have a duty to investigate further before applying for a warrant.  Id. at 53.  We caution, however, that even where such a duty is found to exist, an inquiring court must take an additional step before ordering a Franks hearing:  it must find that the application, expanded to include new information that likely would have been uncovered with additional investigation, would no longer support a finding of probable cause. See id. at 54.

This is a difficult row to hoe and the defendant barely scratches the surface.  Fairly read, the record contains nothing to suggest that Officer Sirois should have entertained obvious

- 18 -

doubts about either the credibility of the victims (Jillian and Ana) or the veracity of their eyewitness accounts. Struggling to cultivate a contrary conclusion, the defendant asserts that two red flags should have caused Officer Sirois to doubt the victims' truthfulness. The officer's failure to pursue the leads suggested by those flags, the defendant adds, amounted to a reckless disregard for the truth.

In our review, these flags are more beige than red. The first flag envisioned by the defendant is the spectacle of a 59-year-old grandmother overpowering a younger, stronger, and heavier armed man — a spectacle so implausible that it should have created obvious doubts, requiring further investigation. But as we already have explained, this reads into the Application more than can be found within its four corners: there was nothing in the facts known to Officer Sirois suggesting that Ana physically overpowered the defendant. Thus, the disparities in age, size, and the like provided no reason at all — let alone an obvious reason — to doubt the victims' accounts.

The second flag envisioned by the defendant is the temporal gap that existed between the occurrence of the home invasion and the victims' reporting of that incident to the police. This delay of five or six hours, the defendant asserts, should

have raised obvious doubts about the victims' credibility.  We do not agree.

The record makes manifest that Officer Sirois did not overlook the delayed reporting.  Rather, he took note of it and questioned the victims about the delay when they described the incident to him.  Jillian stated that she was afraid to report the incident, and Ana stated that she did not report it earlier because she had an intervening doctor's appointment.  On their face, both of these explanations were plausible.  Jillian had ample reason to be scared given the defendant's threat to kill everyone in the house if she went to the police.  Ana heard the same menacing words and, in any event, her desire to keep a scheduled medical appointment was not itself so out of the ordinary as to be suspicious.[5]

Seen in this light, the question reduces to whether something about the delay in reporting, even when plausibly

---

[5] The defendant's reliance on Winzer v. Hall, 494 F.3d 1192 (9th Cir. 2007), is misplaced.  He invokes that opinion for the proposition that statements made contemporaneously with the occurrence of an event are more reliable than statements made hours after the event.  See id. at 1199-1200.  This proposition may be self-evident, but in this case it does no more than set up a straw man:  whether a statement can be sufficiently reliable to be admissible at trial is an entirely different question than whether a witness's statement can be relied upon to support a finding of probable cause.  Cf. United States v. Jordan, 999 F.2d 11, 13-14 (1st Cir. 1993) ("Hearsay statements, like those of . . . the informant, often are the stuff of . . . warrant affidavits.").

explained, sufficed to create obvious doubts about the reliability of the victims' accounts. The district court answered this question in the negative, and we do not regard that answer as clearly erroneous. See United States v. Guzmán-Batista, 783 F.3d 930, 938 (1st Cir. 2015) (stating that "a district court's choice between two plausible competing interpretations of the facts cannot be clearly erroneous" (citation omitted)).

That is game, set, and match. With the delay plausibly explained to the officer's satisfaction, the Application contains no meaningful indicia of unreliability. Two victims gave coherent accounts, which were substantially similar and mutually reinforcing. Moreover, Officer Sirois was able to verify some of the information provided by Jillian (such as the defendant's use of a gray Volvo). Such corroboration weighs in favor of a police officer's decision to treat an informant as a reliable witness. See United States v. Flores, 888 F.3d 537, 544 (1st Cir. 2018). Taking the circumstances as a whole, Officer Sirois had no obvious reason to doubt Jillian's or Ana's veracity and, thus, his failure to conduct any further investigation before applying for an arrest warrant did not demonstrate a reckless disregard for the truth. See Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 10 (1st Cir. 2004) (concluding that "[i]n the absence of circumstances that would raise a reasonably prudent officer's antennae . . . [t]he

uncorroborated testimony of a victim . . . standing alone, ordinarily can support a finding of probable cause").

One loose end remains. The defendant suggests that, had Officer Sirois investigated Jillian more fully, he would have uncovered a trio of prior charges, seemingly related, brought on the same day (in 2007) for forgery of a check, larceny by check, and uttering a false check. These charges, he believes, would have rendered Jillian sufficiently untrustworthy that no warrant based on her word could have established probable cause.

We need not linger long over this suggestion. For one thing, Officer Sirois did check to see whether Jillian had any outstanding warrants (she did not), and we know of no rule requiring a police officer to run a comprehensive criminal record check before giving credence to a victim's account. See United States v. Miller, 753 F.2d 1475, 1478 (9th Cir. 1985) (per curiam) (concluding that officer's failure to check informant's criminal record and background did not amount to reckless disregard for the truth). For another thing, Jillian was never convicted on any of those three related charges; rather, the charges were dismissed in 2008. On the facts of this case, we do not think that the mere incidence of these dismissed charges could fairly be said to undermine Jillian's credibility. Cf. United States v. Tanguay (Tanguay II), 811 F.3d 78, 82 (1st Cir. 2016) (finding failure to

include witness's arrests that "never ripened into convictions" in affidavit did not materially affect probable cause determination); United States v. Rumney, 867 F.2d 714, 720-21 (1st Cir. 1989) ("A criminal record, no matter how lengthy, does not necessarily impugn one's veracity."). Here, moreover, whatever slight weight might fairly be ascribed to these dismissed charges vanishes in light of "countervailing indicia of truthfulness." Tanguay I, 787 F.3d at 50.

That ends this aspect of the matter. We conclude, without serious question, that the district court appropriately denied the defendant's motion for a Franks hearing.

## B. Sentencing.

This brings us to the defendant's claim of sentencing error. As said, the district court sentenced him as an armed career criminal under the ACCA, a statute that mandates mandatory minimum sentences for defendants who have at least three convictions for predicate offenses that qualify as violent felonies and/or serious drug offenses. See 18 U.S.C. § 924(e)(1). The defendant disputes his classification as an armed career criminal.

The issue boils down to whether the defendant's criminal history includes at least three convictions for ACCA predicate offenses. The defendant says that none of his prior convictions

qualifies as an ACCA predicate.  The government demurs, submitting that the requisite number of predicate offenses exist.  It points to the defendant's 1995 ADW conviction, his 2000 drug-distribution conviction, and his 2007 AAIM conviction.[6]

The defendant is facing a steep uphill climb.  He acknowledges that there is circuit precedent holding that each of the three convictions relied upon by the government qualifies as an ACCA predicate offense.  He asks us, though, to reconsider these decisions.

It is common ground that "[i]n a multi-panel circuit, newly constituted panels are, for the most part, bound by prior panel decisions closely on point."  Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995).  This tenet embodies what has come to be known as the law of the circuit doctrine, which is a "subset of stare decisis."  San Juan Cable LLC v. P.R. Tel. Co.,

---

[6] The government's enumeration excludes the 1993 drug conviction, but includes the 2007 AAIM conviction, which the district court did not think satisfied the requirements for an ACCA predicate offense.  See supra note 2.  The fact that the district court did not regard the 2007 AAIM conviction as an ACCA predicate does not foreclose our consideration of it.  When all is said and done, it does not matter that the district court based the defendant's armed career criminal classification on a trio of convictions that differ in part from the trio of convictions on which we rely.  See United States v. Edwards, 857 F.3d 420, 421-22 (1st Cir. 2017) (affirming armed career criminal designation based on different set of predicate-offense convictions than relied upon by sentencing court); United States v. Hudson, 823 F.3d 11, 13 (1st Cir. 2016) (same).

612 F.3d 25, 33 (1st Cir. 2010). The law of the circuit doctrine is one of the sturdiest "building blocks on which the federal judicial system rests." Id. It provides stability and predictability to litigants and judges alike, see id. at 34, while at the same time fostering due respect for a court's prior decisions. Without the law of the circuit doctrine, the finality of appellate decisions would be threatened and every decision, no matter how thoroughly researched or how well-reasoned, would be open to continuing intramural attacks. See LaShawn v. Barry, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc).

Of course, the law of the circuit doctrine — like most legal doctrines — admits of exceptions. In that sense, the doctrine is "neither a straightjacket nor an immutable rule." Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 142 (1st Cir. 2000). Withal, the exceptions to the law of the circuit doctrine are narrowly circumscribed and their incidence is "hen's-teeth-rare." San Juan Cable, 612 F.3d at 33. One such exception applies when the holding of a previous panel is contradicted by subsequent controlling authority, such as a decision by the Supreme Court, an en banc decision of the originating court, or a statutory overruling. See United States v. Rodríguez, 527 F.3d 221, 225 (1st Cir. 2008). A second exception may come into play when "authority that postdates the

- 25 -

original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Williams, 45 F.3d at 592. Unless a litigant can demonstrate that one of these exceptions applies to a prior panel decision, a newly constituted panel must continue to adhere to the earlier holding. See id.

With this legal landscape in place, we examine the defendant's challenges to the status of each of the three predicate-offense convictions relied upon by the government.

- **The 2000 drug conviction**. The defendant argues that his 2000 drug conviction for possession of a controlled substance with intent to distribute under Mass. Gen. Laws ch. 94C, § 32A(a) is not a conviction for a "serious drug offense" within the purview of the ACCA. In mounting this argument, he concedes that a number of our cases hold to the contrary. See, e.g., United States v. Hudson, 823 F.3d 11, 15 (1st Cir. 2016); United States v. Weekes, 611 F.3d 68, 72 (1st Cir. 2010); United States v. Moore, 286 F.3d 47, 49 (1st Cir. 2002). He nonetheless insists that exceptions to the law

- 26 -

of the circuit doctrine allow us to reexamine these precedents. We think not.

The statute under which the defendant was convicted provides for concurrent jurisdiction in the Massachusetts superior and district courts. See Mass. Gen. Laws ch. 94C, § 32A(a); Hudson, 823 F.3d at 14. The prosecuting attorney, in his discretion, designates the forum in which a particular defendant will be charged. See Hudson, 823 F.3d at 14. The statutory maximum sentence for the offense is ten years, see Mass. Gen. Laws ch. 94C, § 32A(a); but if the prosecutor decides to bring the charge in the district court, the defendant cannot be sentenced to more than a thirty-month incarcerative term, see id.; see also id. ch. 218, § 27.

Here, the defendant was prosecuted in district court. Since the ACCA defines serious drug offenses as those "for which a maximum term of imprisonment of ten years or more is prescribed by law," 18 U.S.C. § 924(e)(2)(A)(i), the defendant contends that his conviction should not count as an ACCA predicate offense.

This contention is familiar:  it has been made to us several times in essentially the same form by defendants who, like the defendant in this case, were prosecuted for section 32A(a) offenses in district court.  We have consistently rejected this contention.  See Hudson, 823 F.3d at 14-15; Weekes, 611 F.3d at 72; Moore, 286 F.3d at 49.  The latest reaffirmation of this holding occurred earlier this term.  See United States v. López, 890 F.3d 332, 341 (1st Cir. 2018).

Confronting this wall of precedent, the defendant posits that two Supreme Court decisions justify abandonment of our settled rule.  First, he suggests that United States v. Rodriquez, 553 U.S. 377 (2008), should be deemed controlling authority.  Second, he suggests that Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), provides a compelling reason for believing that earlier panels would change their thinking.

Both suggestions lack force.  These Supreme Court opinions predate several of the decisions that he asks us to reexamine.  Consequently, they cannot lay the groundwork for either of the

exceptions to the law of the circuit doctrine. If more were needed — and we doubt that it is — certain of our prior precedents have specifically discussed and distinguished Rodriquez and Carachuri-Rosendo. See López, 890 F.3d at 338-40 (discussing Carachuri-Rosendo); Weekes, 611 F.3d at 72 (discussing Rodriquez).

To say more about the defendant's 2000 drug-distribution conviction would be supererogatory. Consistent with our prior precedent and with the law of the circuit doctrine, we hold that this conviction is properly classified as an ACCA predicate offense.

- **The 1995 ADW conviction.** The defendant argues that his 1995 ADW conviction under Mass. Gen. Laws ch. 265, § 15B(b) is not a "violent felony" within the purview of the ACCA. In mounting this argument, he concedes that we previously have held to the contrary. See, e.g., United States v. Whindleton, 797 F.3d 105, 116 (1st Cir. 2015); United States v. Hart, 674 F.3d 33, 41 (1st Cir. 2012); United States v. Am, 564 F.3d 25, 33 (1st Cir. 2009). Urging abandonment of this line of cases, he exhorts us to

find that the Supreme Court's decision in Johnson v. United States, 559 U.S. 133 (2010), leaves us at liberty to brush aside the law of the circuit doctrine.

Once again, the defendant's exhortation overlooks the timing of the Supreme Court decision upon which he relies. Johnson predates Whindleton, and our panel opinion in that case provides an in-depth analysis of Johnson, holding squarely that "Johnson does not overrule our [prior] holding" that Massachusetts ADW is a violent felony under the ACCA. Whindleton, 797 F.3d at 116. Consequently, the law of the circuit doctrine controls and compels us to uphold the classification of the defendant's 1995 ADW conviction as an ACCA predicate offense.

- **The 2007 AAIM conviction.** The defendant argues that his 2007 AAIM conviction under Mass. Gen. Laws ch. 265, § 18(b) is not a "violent felony" within the purview of the ACCA. In mounting this argument, he concedes that we have recently determined that Massachusetts AAIM is a violent felony within the purview of the ACCA. See United States v. Edwards,

- 30 -

857 F.3d 420, 427 (1st Cir.), cert. denied 138 S. Ct. 283 (2017). Although the defendant argues that Edwards was wrongly decided, he does not offer any cognizable basis for invoking an exception to the law of the circuit doctrine. Consequently, his argument is foreclosed, and the AAIM conviction is properly classified as an ACCA predicate offense.

With respect to the challenged sentence, all roads lead to Rome. Each of the three convictions identified by the government qualifies, under binding circuit precedent, as a conviction for an ACCA predicate offense. The law of the circuit doctrine is a mainstay of our jurisprudence and, according it due weight, we hold that the district court did not err in classifying the defendant as an armed career criminal and sentencing him under the ACCA.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the defendant's conviction and sentence are

**Affirmed.**